# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ULLICO CASUALTY COMPANY and
PATRIOT NATIONAL INSURANCE GROUP,
INC.,
    Plaintiffs,

v.                                  Case No. 12-C-1031

MATTHIESEN, WICKERT and LEHRER, S.C.,
    Defendant.

## DECISION AND ORDER

In an order dated March 27, 2013, I entered a stay of this case so that litigation of the claims at issue could proceed exclusively in the United States District Court for the Southern District of Texas. In that order, I noted that a motion to remand the Texas case to state court had been filed. I wrote that if the Southern District of Texas granted the motion to remand, I would consider lifting the stay. The Southern District has since granted the motion to remand, and the plaintiffs here have requested that I lift the stay. The defendant has asked me to first decide the motion for abstention that it filed in this court before the Texas case had been removed to federal court. In this opinion, I will address the motion for abstention.

I described the background to this case in my previous order, but it is worth describing that background again here. In January 2010, an explosion occurred at the premises of Thermal Polymer Systems, LLC ("TPS") in Angleton, Texas. The explosion killed one TPS employee and injured several others. The estate of the deceased employee filed tort claims against TPS in state court in Brazoria County, Texas. Ullico

Casualty Company, one of the plaintiffs in the present case, was TPS's workers-compensation carrier, and eventually it paid benefits to the deceased employee's estate and to the other injured workers. After paying these benefits, Ullico hired the Wisconsin law firm of Matthiesen, Wickert & Lehrer, S.C., the defendant in the present case, to pursue subrogation claims based on products-liability principles against various third parties. Ullico also hired the Texas law firm of Kelly Smith & Murrah, P.C., to serve as local counsel. Ullico, having secured the services of these two firms, proceeded to intervene in the Brazoria County lawsuit to assert its subrogation claims against the relevant parties.

By June of 2012, the parties in the Brazoria County case had reached a settlement. This settlement resulted in a sizable payment to Ullico, which the Matthiesen firm deposited in its client trust account in Wisconsin. When Ullico asked the Matthiesen firm to forward this payment to it, the Matthiesen firm informed Ullico that it would retain one-third of the payment, or approximately $650,000, as a contingency fee. However, Ullico insisted that it had never agreed to pay a contingency fee, and it demanded that the Matthiesen firm forward the entire amount to Ullico, with the understanding that Ullico would then pay the Matthiesen firm and the Kelly firm for their services on an hourly basis.

In early July 2012, the Matthiesen firm intervened in the Brazoria County litigation for the purpose of having its fee dispute with Ullico resolved. Shortly thereafter, the Kelly firm joined the Matthiesen firm in asking the Brazoria County court to resolve the fee dispute. The Kelly firm also filed claims against various affiliates of Ullico, alleging that they had tortiously interfered with the firms' contract with Ullico. The Kelly firm also moved to have the funds on deposit in the Matthiesen firm's trust account transferred into the custody of the Brazoria County court.

2

When Ullico received notice of the Kelly firm's motion to have the disputed funds transferred to Texas, it and its third-party administrator, Patriot National Insurance Group, Inc., filed the present lawsuit against the Matthiesen firm under the diversity jurisdiction and moved for a temporary restraining order that would have prevented the firm from completing the transfer. Eventually, the Matthiesen firm agreed that it would leave the funds in its trust account pending resolution of the fee dispute. In the meantime, Patriot, which was also a party to the Brazoria County case, filed a notice of removal of that case to the United States District Court for the Southern District of Texas. The Matthiesen and Kelly firms moved to remand the case back to Brazoria County, and, as noted, that motion was granted.

Once the Matthiesen firm agreed that it would leave the disputed funds in its trust account pending resolution of the parties' fee dispute, one of Ullico and Patriot's principal goals in this suit—preventing transfer of the funds to Texas—was accomplished. However, in addition to seeking an order preventing transfer of the funds to Texas, Ullico and Patriot seek an order requiring the Matthiesen firm to pay the funds to them. In the Texas case, the Matthiesen and Kelly firms seek an order establishing that they are entitled to keep the funds as their contingency fee. Thus, this case and the Texas are parallel proceedings.

The Matthiesen firm contends that I should abstain from exercising jurisdiction in this case under either the Wilton/Brillhart abstention doctrine or the Colorado River abstention doctrine. Under Wilton/Brillhart, "district courts possess significant discretion to dismiss or stay claims seeking declaratory relief, even though they have subject matter jurisdiction over such claims." R.R. Street & Co., Inc. v. Vulcan Materials Co., 569 F.3d 711, 713 (7th

3

Cir. 2009). In the present case, the plaintiffs seek declaratory relief, and the Matthiesen firm contends that this means that abstention under Wilton/Brillhart is an option. The plaintiffs contend that Wilton/Brillhart does not apply because they are seeking other forms of relief in addition to a declaratory judgment—namely, an order requiring the Matthiesen firm to relinquish the funds.

The Matthiesen firm contends that the presence of claims in addition to the declaratory-judgment claim does not preclude application of Wilton/Brillhart because those claims are frivolous. However, the plaintiffs' claim for an order requiring the Matthiesen firm to relinquish the funds is clearly not frivolous. There is a genuine dispute over whether the parties entered into a contingency-fee agreement, and if this dispute is resolved in the plaintiffs' favor, the Matthiesen firm will be ordered to pay the funds in its trust account to the plaintiffs. The parties in their briefs argue over whether the legal theories mentioned in the plaintiffs' complaint are the right legal theories for obtaining this relief (those legal theories are labeled "constructive trust," statutory theft", and "accounting"), but that is irrelevant. Plaintiffs plead claims—that is, grievances—rather than legal theories, see Simpson v. Nickel, 450 F.3d 303, 305 (7th Cir. 2006), and here the plaintiffs have pleaded a claim for payment of the disputed funds. Certainly there is a non-frivolous legal theory that supports this claim (conversion comes to mind), and the claim is independent of any request for declaratory relief—the claim would survive even if the request for declaratory relief were dropped from the case. See R.R. Street, 569 F.3d at 716–17 (stating that test for whether Wilton/Brillhart applies is whether claims for non-declaratory relief would survive if claim for declaratory relief were dropped from the case). Accordingly, the Wilton/Brillhart abstention doctrine cannot be invoked in this case, and whether abstention

4

is appropriate turns on whether I should abstain under the Colorado River abstention doctrine.

The Colorado River abstention doctrine stems from Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976). It permits a federal court to stay or dismiss a suit when there is a concurrent state proceeding and the stay or dismissal would promote wise judicial administration. AXA Corp. Solutions v. Underwriters Reinsurance Corp., 347 F.3d 272, 278 (7th Cir. 2003). For the doctrine to apply, the two suits must be parallel, meaning that substantially the same parties are contemporaneously litigating substantially the same issues. Id. If the two suits are parallel, the court should then take ten separate factors into consideration in deciding whether or not to abstain:

> (1) whether the state has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained in the concurrent forums; (5) the source of governing law, state or federal; (6) the adequacy of state-court action to protect the federal plaintiff's rights; (7) the relative progress of state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim.

Id. Ultimately, however, "the decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 16 (1983). Moreover, abstention under Colorado River is appropriate only in "exceptional circumstances," and there is a general presumption against abstention. Id. For this reason, "absent or neutral factors weigh in favor of exercising jurisdiction." Huon v. Johnson & Bell, Ltd., 657 F.3d 641, 648 (7th Cir. 2011).

In the present case, most of the relevant factors are either absent, neutral, or weigh against abstention. The first factor—whether the state court has assumed jurisdiction over property—is neutral, since the state court has not assumed jurisdiction over any property. The second factor—the inconvenience of the federal forum—is neutral, since Wisconsin is not an inconvenient forum for the Matthiesen firm and the plaintiffs prefer to be here. The fourth factor—the order in which jurisdiction was obtained—and the seventh factor—the relative progress of the state and federal proceedings—are neutral. Although the fee dispute was brought into the Texas case before the plaintiffs filed the present suit, the fee dispute had been pending in Texas for only a short time before this action was commenced, and because of the delay caused by the removal that case has hardly progressed at all. Thus, neither forum can claim priority due to the order in which jurisdiction was obtained or the relative progress of the respective cases. See Moses H. Cone, 460 U.S. at 21–22 ("priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions"). The fifth factor—the source of governing law—is neutral. Although state law will control all substantive issues in both cases, the laws of both Wisconsin and Texas will be relevant. While it may seem that the lack of a federal question favors abstention, that is not so—the Seventh Circuit has held that a diversity plaintiff may not be treated differently than a federal-question plaintiff. See Evans Transp. Co. v. Scullin Steel Co., 693 F.2d 715, 717 (7th Cir. 1982). The sixth factor—the adequacy of the state court to protect the federal plaintiff's rights—is neutral. I don't know anything about the Texas court or whether it would adequately protect Ullico's rights, but even if it would that would at most mean that the adequacy of the Texas court is not an obstacle to abstention; it would not be an

6

affirmative reason for relinquishing federal jurisdiction. The eighth factor—the presence or absence of concurrent jurisdiction—is neutral. There is concurrent jurisdiction, and so lack of jurisdiction is not an obstacle to abstention, but again that is not an affirmative reason for relinquishing federal jurisdiction. The ninth factor—the availability of removal—weighs against abstention, since it has been established that removal is not available. The tenth factor—the vexatious or contrived nature of the federal claim—is absent, since there is no federal claim in the first place.

One factor does favor abstention, and that is the third—the desirability of avoiding piecemeal litigation. The Kelly firm is a party to the Texas case but is not a party here and could not be made a party. Yet, Ullico engaged both the Matthiesen firm and the Kelly firm to litigate its subrogation claim, and both firms insist that Ullico agreed to pay them on a contingency basis. Although the issue of whether Ullico agreed to pay the Matthiesen firm on a contingency basis could be resolved in the present suit, the issue of whether Ullico agreed to pay the Kelly firm on a contingency basis could not be. Moreover, it is likely that the issue of whether Ullico agreed to pay the Kelly firm on a contingency basis will turn on the same facts and legal questions as will the issue of whether Ullico agreed to pay the Matthiesen firm on a contingency basis—the Kelly firm does not claim to have had any discussions with Ullico about its fee separate from the Matthiesen firm's discussions. Thus, there is a danger that both this case and the Texas case will result in inconsistent adjudications based on the same facts: it is possible that in this case there will be a determination that the Matthiesen firm is not entitled to a contingency fee and that in the Texas case there will be a determination that the Kelly firm is entitled to a contingency fee. Normally, the doctrines of claim and issue preclusion would prevent the possibility of

inconsistent adjudications—the first court to reach a judgment will control the outcome in both courts—but since the Kelly firm is not a party to this case, a judgment in this case will likely not have claim or issue preclusive effect on its claims, even if those claims overlap entirely with the Matthiesen firm's claims. See, e.g., Hansberry v. Lee, 311 U.S. 32, 40 (1940); Pasko v. City of Milwaukee, 252 Wis. 2d 1, 18–19 (2002).[1] In contrast, the Texas case could resolve the claims of all interested parties, and the Texas court's judgment would then have preclusive effect here. Thus, if I stayed this case pending resolution of the Texas case, the threat of inconsistent adjudications would be eliminated. Cf. Caminiti & Iatorola, Ltd. v. Behnke Warehousing, Inc., 962 F.2d 698, 701–02 (7th Cir. 1992); Lumen Construction, Inc. v. Brant Construction Co., Inc., 780 F.2d 691, 694 & n.2 (7th Cir. 1986).

Still, the Supreme Court has stated that "the mere potential for conflict in the results of adjudications, does not, without more, warrant staying exercise of federal jurisdiction." Colorado River, 424 U.S. at 816; see also Caminiti, 962 F.2d at 702 n.3. In the present case, there is the potential for conflict in the results of adjudications, but nothing more that weighs in favor of a stay. In short, there are no "exceptional circumstances." Thus, I conclude that abstention is not appropriate.

Accordingly, **IT IS ORDERED** that the defendant's motion for abstention is **DENIED**.

Dated at Milwaukee, Wisconsin, this 24th day of June 2013.

s/ Lynn Adelman
LYNN ADELMAN
District Judge

---

[1] There are exceptions under which litigants can be bound by judgments in cases to which they were not parties, but none of the exceptions obviously apply to the Kelly firm. See, e.g., Taylor v. Sturgell, 553 U.S. 880, 884–907 (2008). The "adequate representation" exception could apply, but probably it does not because it is limited to more formal instances of representation—such as class actions and suits by fiduciaries. See id. at 894–95, 900–01.